UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

DIANE SPEER,

    Plaintiff,
vs.

NCL (Bahamas) Ltd.,
A Bermuda Company,
d/b/a NORWEGIAN CRUISE LINES, INC.,
NORWEGIAN CRUISE LINE HOLDINGS LTD.,

    Defendants
_____/

## COMPLAINT

**COMES NOW**, the Plaintiff, DIANE SPEER, by and through undersigned counsel, and sues the Defendants, NCL (Bahamas) Ltd., A Bermuda Company, d/b/a NORWEGIAN CRUISE LINES, INC., and NORWEGIAN CRUISE LINE HOLDINGS LTD., and further states as follows:

## GENERAL ALLEGATIONS

1.  This is a cause of action which is brought in the District Court for the Southern District, Florida pursuant to 28 U.S.C. 1332 and the forum selection clause of Plaintiff's passenger cruise ticket with Defendant. The cause of action is in excess of $75,000.00. There is diversity of citizenship. Plaintiff is a resident and citizen of the state of New Jersey. This is a maritime cause of action.

2.  Plaintiff has complied with all conditions precedent or, in the alternative such conditions do not apply to this Plaintiff. Plaintiff is filing suit pursuant to an extension of the applicable statute of limitations given to Plaintiff by Defendants

through June 9, 2016.

3. Defendants are foreign corporations which are licensed to do business in Florida as a cruise line. Defendants' base of operations is in Miami, Dade County, Florida.

4. At all times material, Defendants owned and/or operated a cruise ship named NORWEGIAN GETAWAY. The vessel, at all times material, was in navigable waters.

5. At all times material, Defendants maintained a medical center aboard the cruise ship NORWEGIAN GETAWAY and stocked it with medicines and equipment.

6. At all times material, Defendants had the ability to contemporaneously communicate with medical doctors and specialists not on board to discuss and consult with said land-based physicians about the care and treatment of passengers on board ship who may require the services of a ship board physician.

7. At all times material, Defendants or one of them were members of the Cruise Line Industry Association (CLIA). CLIA represents to the American public that its members aspire to the standards of care of the American College of Emergency Physicians (ACEP) in the operation of medical centers on cruise ships.

8. Defendants maintain the infirmary on board its cruise ships, in particular the one on board NORWEGIAN GETAWAY in the medical center.

9. At all times material, Defendants treated Plaintiff in the ship's infirmary for several injuries including an open abrasion on her lower right leg.

10. At all times material, the ship's doctor was a medical doctor employed by Defendants as a ship's physician for NORWEGIAN GETAWAY and was, at all times material, acting within the course and scope of his/her employment with

Defendants.

**COUNT ONE-NEGLIGENCE REGARDING A PASSENGER CABIN**

11. Plaintiff reavers and realleges paragraphs One through Three.

12. On or about April 9, 2015, Plaintiff was a fare-paying passenger on NORWEGIAN GETAWAY.  The vessel was in navigable waters. Defendants owned or operated NORWEGIAN GETAWAY at all times material.

13. At all times material, Defendants owed Plaintiff a duty of reasonable care in the circumstances aboard its/their vessel.

14. Notwithstanding Defendants' duty as aforesaid, Defendants breached its duty by unreasonably:

    a. Failing to properly design and/or construct a passenger cabin free from obstructions and other hazards, and/or;

    b. Failing to warn the Plaintiff of the dangers of using a passenger cabin with three persons prior to and at the time the cabin was assigned to her , and/or;

    c. Failing to properly and safely maintain a passenger cabin, and/or;

15. As a result of the foregoing, the Plaintiff was injured when she tripped and fell on the edge of a sofa bed which was being used by her daughter as a third person in the cabin as she attempted to get undressed.  Plaintiff sat on the edge of her bed facing the sofa bed.  In the process of getting undressed, she took a small step forward and tripped on the edge of the sofa bed and fell. The cabin as it was designed and configured was too small to safely accommodate three adult persons and all their luggage, especially as Plaintiff is a large woman.  At issue is a fixed sofa bed on a platform sitting on a set of drawers with corners on the edge of the sofa which

posed a tripping hazard for persons like Plaintiff.    After several days of being in the cabin, the Plaintiff was aware of the existence of the third bed in the cabin but had to maneuver around it when using the cabin.   At the time of the incident, Plaintiff was attempting to get undressed when she tripped over the edge of the bed which jutted out into the useable space of a cabin made unreasonably small and cramped and crowded by its design and configuration with three people living in it. with all their luggage.

16. At all times material, the Defendants had actual knowledge of the dangerous condition and/or constructive knowledge of the dangerous condition by the length of time the condition existed, the size of the dangerous condition (furniture in the cabin), and/or the nature of the dangerous condition and/or the fact that the dangerous condition was ongoing, repetitive or recurring with some regularity.

17. At all times material, Plaintiff acted with due care for her own safety.

18. In the alternative, Defendants are not required to have notice of the condition because Defendants engaged in and was guilty of negligent maintenance and/or engaged in negligent methods of operation in terms of making the cabin too small and too crowded for reasonably safe use.

19. Defendants actively participated in the design and construction of NORWEGIAN GETAWAY.   Defendants through its/their new build department, in-house engineers, architects and designers and others, actively participated in the design and construction of NORWEGIAN GETAWAY and chose or participated in choosing the size of the passenger cabin and the size of the furniture to be permanently affixed therein, such as where Plaintiff tripped and fell.

20. The Defendants contracted with design firms to design the interior of the passenger cabin where this incident occurred, contracted with the shipyard to build the ship, stationed representatives at the shipyard to oversee construction and design elements, and through the contract documents and relationship as owner, had the ultimate ability and responsibility to accept or reject the design and construction, and/or materials chosen, including the cabin and furniture where the incident occurred.

21. As a result of the negligence of the Defendants as aforesaid, the Plaintiff was injured in and about her body and extremities, suffered an open abrasion to her leg which became infected and suffered other injuries to her back and upper and lower extremities and suffered pain, mental and emotional distress and anguish therefrom; suffered scarring and disfigurement; incurred medical expense and physical handicap, and a loss of the ability to enjoy life; lost the enjoyment of his cruise, suffered a loss of earning capacity, and an aggravation of known and/or unknown physical conditions.   Said personal injuries are permanent and/or continuing in nature and the Plaintiff shall continue to suffer such losses and impairments in the future.

WHEREFORE, Plaintiff demands judgment from Defendants for damages and costs and pre-judgment interest.   Jury trial is demanded.

## COUNT II-NEGLIGENT MEDICAL CARE AND TREATMENT

22. Plaintiff re-avers and re-alleges Paragraphs one through ten as if set forth `` herein.

23. On or about April 9, 2015, Plaintiff was injured.

24. Plaintiff injured her elbow, suffering a dislocated elbow when she fell and suffered an open abrasion to her leg, which became infected and progressed to cellulitis and other orthopedic, neurological and other injuries.

25. After she fell, Plaintiff was taken to the medical center on board GETAWAY where her elbow received treatment. However, the open abrasion on her leg was not treated appropriately and progressed to an infection, causing other serious complications.

26. Plaintiff was prescribed various pain killers but no antibiotics for the open abrasion and developed an infection and other potential adverse consequences.

27. Plaintiff was caused to suffer unnecessary pain due to the failures of Defendants' medical employees to make the correct diagnoses and institute the proper treatment.

28. Subsequent to disembarking the GETAWAY and continuing through the present, Plaintiff was caused to suffer and will continue in the future to suffer unnecessary pain due to the failures of Defendants' medical employees and staff to make the correct diagnoses and institute the appropriate medical treatment.

29. Defendants' medical care and treatment of Plaintiff fell below the standard of care in charting, record-keeping, diagnosis, failing to make the correct diagnoses, failing to use a rule-out system of diagnosis, and failing to live up to the aspirations and public policy statements of the Cruise Line Industry Association regarding ACEP.

30. Defendants' failures as alleged in Paragraph 33 caused new injuries and aggravated Plaintiff's original injuries she sustained on April 9, 2015.

31. Defendants owed Plaintiff a duty of reasonable care in the circumstances in the provision of medical care and treatment to Plaintiff following her injuries on April 9, 2015.   This duty included providing the appropriate care and treatment and making the proper diagnoses.

32. Notwithstanding Defendants' duty as aforesaid, Defendants, through the actions of its employees and agents, breached same in the following particulars:

    a) in failing to properly assess Plaintiff's condition;

    b) in failing to make timely diagnoses and render appropriate treatment;

    d) in failing to timely order appropriate scans to timely make the correct diagnoses;

    e) in failing to timely obtain consultations with appropriate specialists;

    g) in failing to properly monitor the Plaintiff;

    h) in failing to prescribe antibiotics;

    i) in deviating from the standard of care for patients like Plaintiff who suffered a significant and traumatic injury to her leg as a result;

33. At all times material, Plaintiff acted with due care for her own safety.

34. As a result of the negligence of the Defendants as aforesaid, the Plaintiff was injured in and about her body and extremities, suffered a serious infection and other injuries and suffered pain, mental and emotional distress and anguish therefrom; incurred medical expense and physical handicap, and a loss of the ability to enjoy life; lost the enjoyment of her cruise, suffered a loss of earning capacity, suffered scarring and disfigurement, and an aggravation of known and/or unknown physical conditions, suffered scarring and/or disfigurement.   Said personal injuries are permanent and/or continuing in nature and the Plaintiff shall

continue to suffer such losses and impairments in the future.

WHEREFORE, Plaintiff demands judgment from Defendants for damages and costs and pre-judgment interest.   Jury trial is demanded.

## **COUNT III-NEGLIGENCE BASED ON APPARENT AGENCY**

35.  Plaintiff alleges and avers paragraphs 1-10 and 23-33 as if set forth herein.

36.  At all times material, Defendants held out its medical staff, including its doctors and nurses, as being its employees who work in its "medical center" on the vessel.

37.  Defendants promote its medical staff and represents them as being their employees through brochures, internet advertising and on the vessel itself.

38.  Defendants held out its staff including the nurses and doctors as being direct employees or actual agents.

39.  Defendants promote the idea that the medical staff who work in its "medical center" are employed by the cruise line as a marketing tool to induce passengers such as Plaintiff herein to buy cruises on its ships, particularly since the cruise line cruises to various ports in Third World countries that do not have the proper and adequate medical care that Americans have come to expect and deserve.

40.  The Defendants manifested to the Plaintiff in this case that its/their medical staff as alleged were acting as its employees and actual agents in various ways, including but not limited to:

a) the doctors and nurses all worked in what Defendant refers to as its "medical center";

b) the medical center is owned and operated by Defendant, which pays to stock the medical center with medicines, supplies and equipment;

c) the passenger is billed directly by Defendants through the passengers' on board credit account with the cruise line for all medical services rendered at the onboard medical center, whereas the medical staff of doctors and nurses are paid salaries directly by Defendants pursuant to contracts of employment;

d) the medical staff are given ship uniforms to wear which include name tags with the Norwegian Cruise Line logo.   Said uniforms are required by Defendants to be worn by the doctors and nurses;

e) the doctors are considered to be officers on board, are members of the crew and are introduced to passengers as ship's officers;

f) the ship's doctors and nurses are held out to passengers and Plaintiff herein as being members of the ship's crew;

g) the Defendants placed the medical staff under the command of the ship's superior officers including the Staff Captain, second only in overall authority to the ship's master;

h) the Defendants represent to immigration authorities that the medical staff of doctors and nurses are in fact members of the ship's crew;

i) the ship's doctors and nurses are permitted to eat with the ship's crew whereas passengers are not permitted to do so;

j) the ship's physicians and nurses provide medical services to the ship's medical center and the Plaintiff was required to go to the medical center for treatment;

k) that on the day the Plaintiff slipped and fell and was injured, she was seen in the

medical center by a ship's nurse but was later seen by the two doctors on board;

41. Based on the foregoing, the Plaintiff reasonably believed that the ship's nurse and doctors were acting as direct employees or actual agents on behalf of Defendants and was never given any reason to believe otherwise.

42. The Plaintiff relied to her detriment on his belief that the doctors and nurses were acting as direct employees or actual agents of the Defendants in that Plaintiff followed the advice of the medical staff and did not seek further evaluation or treatment while she was on board ship which was not recommended by the ship's doctors or nurses.

43. As a result of the Plaintiff's reliance on the ship's medical staff, the Plaintiff's open abrasion was not properly diagnosed or properly treated and the condition was aggravated, subjecting Plaintiff to unnecessary pain and suffering and causing complications and unnecessary procedures as a direct and proximate result thereof.

44. The Defendants are liable to the Plaintiff for any and all damages as a result of the negligent medical care by the ship's nurses and physicians under the theory of apparent agency.

45. As a result of the negligence of the Defendants as aforesaid, the Plaintiff was injured in and about her body and extremities, suffered an infection and other injuries and suffered pain, mental and emotional distress and anguish therefrom; incurred medical expense and physical handicap, and a loss of the ability to enjoy life; lost the enjoyment of his cruise, suffered a loss of earning capacity, and an aggravation of known and/or unknown physical conditions,

suffered scarring and disfigurement. Said personal injuries are permanent and/or continuing in nature and the Plaintiff shall continue to suffer such losses and impairments in the future.

Dated this 9th day of June, 2016.

>HOFFMAN LAW FIRM
>PAUL M. HOFFMAN, P.A.
>2881 East Oakland Park Boulevard
>Fort Lauderdale, FL 33306
>Telephone: (954) 707-5040
>
>By: *//s// Paul M. Hoffman*
>PAUL M. HOFFMAN, ESQ.
>Florida Bar No: 0279897